UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


DAVID W. FRAZIER #116378            )
                                   )
v.                                 )            NO. 2:04-CV-265
                                   )
OFFICER JASON RAMSEY, *et al.*     )


**<u>MEMORANDUM OPINION</u>**


        This is a *pro se* civil rights action for injunctive relief and damages

brought under 42 U.S.C. § 1983 by David W. Frazier, a former prisoner.  The case

is now before the Court on various dispositive motions, including motions for

summary judgment filed by defendants Jason Ramsey and C.J. Ball [Docs. 18 and 35]

and motions to dismiss filed by defendants Cocke County, Tennessee and C. J. Ball.

[Docs. 34 and 37].  The plaintiff opposes these motions.  [Docs. 27 and 42].

        There is one matter to be considered at the outset.  The plaintiff has

notified the Court of his release from imprisonment, [Doc. 46, Notice of Address

Change], which impacts his claims for injunctive relief.  Clearly, the plaintiff could

derive no benefit from the granting of injunctive relief from the claimed wrongful

conditions in the Cocke County jail, since he is no longer incarcerated in that facility.

Therefore, all issues concerning injunctive relief with respect to the conditions in the Cocke County facility have become moot, *see Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996), and will be **DISMISSED**.

## I. **Background**

According to the plaintiff's allegations, his claims arose out of the following sequence of events. At approximately 8:30 a. m. on January 1, 2004, the plaintiff was arrested for assault by defendant Jason Ramsey, a Newport, Tennessee police officer. Prior to defendant Ramsey's arrival on the scene, the plaintiff had been beaten with a baseball bat and had sustained severe physical injuries. The facts ascertained through defendant Ramsey's investigation, along with the plaintiff's requests for medical care, his declarations, and his visible wounds, served to inform the defendant that the plaintiff required immediate medical attention. Yet, the defendant did not take the plaintiff to the hospital for treatment, as he had requested. Instead, though he knew that the plaintiff needed immediate medical attention, the defendant took him to the Cocke County jail.

Once the plaintiff was at the jail, he continued to ask for medical care, addressing his requests to various officers. At some point, defendant C. J. Ball, a Cocke County Sheriff's Deputy, informed the plaintiff that he would not receive

medical care that day because it was New Year's Day. Undaunted by this response, the plaintiff persisted in asking for medical attention. In response to these further requests for medical care, defendant nurse Jane Doe came to the holding cell the next morning, gave him a cursory examination, and, after a telephone consultation with defendant jail doctor John Doe, administered an injection of pain medication. That afternoon, the plaintiff was released on bail. He then sought and received medical attention for his injuries, which were diagnosed as a broken hand, multiple facial fractures, and a broken jaw—the latter of which required surgery and the insertion of pins. The plaintiff charges that the defendants' conduct violated his constitutional right not to be subjected to deliberate indifference to his serious medical needs.

## II. **Standards of Review**

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment at a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, a court is obliged to view the facts and all inferences to be drawn from them in the light most favorable to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The burden is on the moving party to

show, conclusively, that no genuine issue of material fact exists.

Once a motion for summary judgment is made and supported, however, the non-moving party must present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The inquiry is whether the evidence is so one-sided that one party must win as a matter of law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). On summary judgment, if the resolution of the matter rests on which party's contrary version of the facts is true, the case should be offered to the trier of fact, since a court may not weigh evidence or make credibility assessments. *Id*. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter"); *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir.1994) ("[S]ummary judgment is not proper where a prisoner's affidavit supports an Eighth Amendment claim and explicitly contradicts the defendant's version of the facts.")

In assessing a motion to dismiss, a court "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp*., 281 F.2d 613, 619 (6th Cir. 2002).

## III. **Discussion**

A. *Motion for Summary Judgment [Defendant Jason Ramsey]* .

In his motion, defendant Ramsey argues that he is entitled to summary judgment because he enjoys qualified immunity from damages. [Doc. 18]. In support of his motion, the defendant has offered his own affidavit, a copy of the plaintiff's jail intake report, and a colored photocopy of the plaintiff's photograph, taken during the booking process. [*Id.*, Attach. 1 and 2].

Under the qualified immunity doctrine, government officials performing discretionary functions are shielded from civil damages liability in personal-capacity lawsuits[1] so long as their actions do not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts qualified immunity, a court first must ascertain whether the facts alleged, taken in a light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right; if so, it then must determine whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).[2]

---

[1] All claims against defendant Ramsey in his official capacity were dismissed by prior order.

[2] The Sixth Circuit uses the two-step analysis in *Saucier*, as well as the three-step analysis in *Feathers v. Aey,* 319 F.3d 843 (6th Cir.2003). The additional step involves an inquiry into whether a plaintiff has submitted sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Id.* at 848. Either analysis captures *Saucier*'s holding. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n.2 (6th Cir. 2005).

Once a qualified immunity defense has been advanced, it is the plaintiff's burden to show that a defendant is not entitled to qualified immunity. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir.2000).

     1. *Do the facts, viewed in the plaintiff's favor, show a constitutional violation?*

     The right purportedly transgressed by the defendant was the plaintiff's right to medical care. A discussion of this right begins with the Eighth Amendment, which prohibits prison authorities from inflicting cruel and unusual punishment on inmates by acting with deliberate indifference to their serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Eighth Amendment's protection extends to pretrial detainees through the Fourteenth Amendment's Due Process Clause, *see Whitley v. Albers*, 475 U.S. 312, 327 (1986), and, therefore, a claim by a pretrial detainee challenging conditions of confinement is analyzed under the Eight Amendment. *See Thompson v. County of Medina*, 29 F.3d 238, 327 (6th Cir. 1994). *See also Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) ("Whether a convicted prisoner or a pretrial detainee, deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. § 1983"). The same deliberate-indifference standard applies to an arrestee, where an officer has "time to fully consider the potential consequences of [his] conduct." *Owensby v. City of*

*Cincinnati*, 414 F.3d 596, 603 (6th Cir. 2005) (citing to *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002)).

An Eighth Amendment claim contains an objective and a subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires a plaintiff to show that he was exposed to a substantial risk of serious harm, and the subjective component requires him to show that defendant acted with a sufficiently culpable state of mind. *Id*. at 834-36. Where a prisoner is claiming constitutional medical mistreatment, the objective factor of the test (i.e., the existence of a serious medical need) is satisfied where he shows that his condition "has been diagnosed by a physician as mandating treatment or...is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (listing cases). The prisoner meets the subjective aspect of the test by alleging "facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837).

a. *Objective Element*.

Though the plaintiff appears to be claiming that he received no medical care whatsoever, his true claim is that medical care was delayed until the next day,

since he did receive medical treatment at that time. Where, as here, the alleged constitutional violation is a delay in medical treatment for a serious medical need, a slightly different analysis is employed to determine whether a plaintiff has satisfied the objective element of the test (i.e., (whether the claimed deprivation was sufficiently serious). For example, a court must examine the effect of the delay to ascertain whether the deprivation was sufficiently grave that it posed a substantial risk of serious harm. *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). Where the delay-of-treatment claim involves a non-obvious injury, a plaintiff must submit verifying medical evidence showing the detrimental effect of the delay. *Blackmore*, 390 F.3d at 898 (citing to *Napier*, 238 F.3d. at 742-43). Where it involves an obvious injury, a plaintiff makes the necessary showing by demonstrating that he experienced the need for medical treatment and that the need was not addressed within a reasonable time. *Id.*, at 900. Where the injury is evident, the detrimental effect of the delay is not at issue because it is *the delay itself* which creates the substantial risk of harm. *Id.*, at 890.

i) *The Nature of the Injury*: As noted, a delay-of-treatment claim involving an obvious injury does not require submission of medical evidence verifying the detriment resulting from the delay. This, however, begs the question as to whether the plaintiff's injury was obvious.

Here, the plaintiff has alleged, in his pleadings and in his response,[3] that his jaw and hand were swelling at the time of his arrest and subsequent transport to the jail, that defendant Ramsey knew he had been struck in the head with a baseball bat, and that he asked the defendant officer to take him to the Emergency Room for treatment.[4]

A jury could find, on the evidence summarized above, that the plaintiff's condition amounted to an obvious medical need. It might find that, under the circumstances described by the plaintiff, a lay person would have recognized the plaintiff's immediate need for medical care. However, as noted, even where a prisoner alleging a delay in medical treatment offers evidence to show that he had an obvious injury, there is one additional showing to be made. He must also demonstrate that his need for medical care was not addressed in a reasonable time. *Blackmore*, 390 F.3d at 899-900; *Hubbard*, 2006 WL 2787004, at *5 (citing *Blackmore*).

---

[3] The plaintiff has filed an affidavit, averring that he has personal knowledge of the facts and statements contained in his response to defendant Ramsey's motion and that they are true and accurate. [Doc. 27, Attach., Frazier Aff.].

[4] Although the copy of the photograph of the plaintiff, taken after his arrest, does not depict a visible injury to his face, it is for the jury to decide, and not this Court, whether the photocopied photograph is of sufficient clarity to delineate any facial swelling or indentation in the plaintiff's jaw. Also noted is the fact that the plaintiff's right hand is not shown in the above-the-waist photograph. *See Hubbard v. Gross*, 2006 WL 2787004, *5 and n.1, 2006 Fed. App. 0700N (6th Cir. Sept. 27, 2006) (finding that the evidence showed that an arrestee's broken, swollen, and bleeding hand constituted an obvious injury) (citing *Blackmore*, 390 F.3d at 899-900).

ii) *The Length of the Delay*:  The Court's research has revealed no Sixth Circuit case which establishes what is a reasonable length of time within which to provide medical care for a prisoner's obvious, serious injury.  In one instance, a two-day delay was found to be unreasonable, where the defendants knew that the prisoner was vomiting and complaining that he had had sharp and severe stomach pains for a prolonged period of time—symptoms later characterized as "classic symptoms of appendicitis."  *Blackmore*, 390 F.3d at 898.  In another case, a two-hour delay in obtaining medical care for an arrestee's broken hand—though an obvious and serious medical need—was found not to be an unreasonable time-frame.  *Hubbard*, 2006 WL 2787004, at *5.  Likewise, an eight-hour delay in providing medical treatment for a prisoner's broken wrist was held not to be a constitutional violation.  *Gray v. Dorning*, 202 F.3d 268, 1999 WL 1336118, *1 (6th Cir. Dec. 20, 1999).

These cases lead to the conclusion that what is a reasonable time to delay medical care for a serious medical need depends upon the circumstances in a given case and that, since the circumstances in this case are disputed, whether it was reasonable to wait until the next day to provide medical care for the plaintiff's facial fractures and broken hand is a triable issue.

If, however, the facts presented by the plaintiff, viewed in his favor, are insufficient to allow a jury to conclude that his injury was obvious, then the evidence

would have to include medical proof verifying the detrimental effect of the delay, since his injury necessarily would be non-obvious.

Here, there is such proof. The nurse's notation on the plaintiff's medical request slip [Doc. 35, Exh. 1 to Michael McCarter's Aff.] shows that, as of 9:30 a.m. the next day, the plaintiff's right hand was bruised, swollen on the side, and probably fractured and that he had facial trauma, with indentations to the right side of his face. The medical request slip from the jail also shows that the plaintiff complained that he was hit with a baseball bat in the right side of his head, just below his eye, and that his right hand was injured. The slip also shows that the plaintiff's right hand was placed in a splint and that he was given pain medication.

Further, the medical reports from his visits to the hospital later that same day disclose that he had fractures and swelling of his facial bones and that the bone connecting the little finger to the wrist was broken. Thus, if verifying medical evidence of the detrimental effect of the delay were required in this case, the medical proof submitted by the plaintiff is sufficient to make this an issue for the trier of fact.[5]

_____

[5] The plaintiff maintains that he was in severe pain, which could constitute a detrimental effect resulting from a delay in medical care. *See Byrd v. Wilson*, 701 F.2d 592, 595 (6th Cir. 1983) ("a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering"). *See also Blackmore*, 390 F.3d at 899 (noting that prisoner whose appendix did not rupture had a right to avoid the pain from a defendant's deliberate indifference to his "obvious manifestations of pain and injury"); *Vaughn v. City of Lebanon*, 18 Fed.Appx. 252, *275 (6th Cir. Aug. 16, 2001) (finding that "subjective feelings of pain may, if sufficiently egregious, satisfy the objective

*See Brown v. Hughes*, 894 F.2d 1533, 1538 n.4 (11th Cir. 1990) (observing that, generally, evidence of recent traumatic injury is sufficient to demonstrate a serious medical need).

        b. *Subjective Element*.

        The Court turns now to the second component of the test, i.e., the deliberate indifference facet. This aspect of the *Farmer* test is exhibited where a defendant is actually aware of facts from which the inference could be drawn that there is a substantial risk of harm, where he also draws the inference, and disregards the risk. *Farmer*, 511 U.S. at 837. Deliberate indifference is also manifested when a defendant intentionally denies or delays access to medical attention for a serious medical need. *Estelle*, 429 U.S. at 104. There is no deliberate indifference, however, where a defendant lacks "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir.1994). Therefore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction

---

component of *Farmer*"); *but see Gray v. Dorning*, 202 F.3d 268, 1999 WL 1336118, *1 (6th Cir. Dec. 20, 1999) (finding no constitutional violation involving an 8-hour delay in obtaining treatment for a prisoner who complained of pain from a fractured wrist). The medical request slip showing that the plaintiff was given pain medication seems to verify that the plaintiff's condition required treatment to alleviate pain.

of punishment." *Farmer*, 511 U.S. at 838.  To prove knowledge of the risk, a prisoner

may rely on circumstantial evidence;  in fact the obviousness of the risk may be

sufficient to establish knowledge.  *Id.* at 842.[6]

Here, the plaintiff alleges that he had visible, physical injuries, that he

asked defendant Ramsey to take him to the hospital emergency room,  that, instead,

the defendant officer transported him to jail,  and that this conduct evinces deliberate

indifference to his serious medical needs, which (as later diagnosed) consisted of jaw,

hand, and facial fractures.

Defendant Ramsey argues that, to the contrary, the plaintiff had no

obvious or readily-observable injury and that he had no reason to suspect that the

plaintiff was injured.  In his supporting affidavit, defendant Ramsey avers that the

plaintiff never complained of any injuries or pain, never even mentioned that he

needed medical care, did not indicate that he was injured in any way,  did not appear

to be in pain, and had no trouble communicating with him.[7]  Thus, the defendant

---

[6] There is considerable overlap between the two *Farmer* components, given that the obviousness of an injury, which can manifest that a layperson would recognize the need for immediate medical attention, can also satisfy *Farmer*'s objective element.

[7] As circumstantial evidence to contradict defendant Ramsey's averment that there were no communication problems, the plaintiff points to notations in his medical report, [Doc. 17, History & Physical Worksheet of Baptist Hospital of Cocke County], which states that he "appears under influence or medica [indecipherable] (takes Darvocet)" and has "slightly slurred speech."  If the plaintiff is asking the Court to infer that he could not communicate clearly with the defendant on January 1, 2004, because he was thought to be under the influence of medication on January 2nd, any such an inference must be deferred to the factfinder.

suggests, it cannot be seriously argued that he purposely or recklessly denied the plaintiff medical care and that clearly his actions were reasonable.

Defendant Ramsey also points to the intake report from the jail, as further support for his position. The intake report contains various questions, one of which is an inquiry into whether the arrestee has any injuries which need treatment. Immediately following this question, two blank spaces are provided where a "Yes" or "No" answer is to be checkmarked. The intake report bearing the plaintiff's signature has a checkmark in the blank space beside "No."

This evidence is challenged by the plaintiff. While acknowledging that he signed the intake form, the plaintiff denies that he said that he did not need medical attention, claims that he told county jail officials that he needed medical assistance, and insists that the checkmark was made by "hands other than the plaintiff[s']." [Doc. 27, Pl.'s Br. at 4]. This dispute makes the issue a jury question.

Next, the defendant offers the photocopied photograph to support his argument that the plaintiff had no evident injuries. The photocopied mug shot, even when enlarged 200% in the Court's computerized Photoshop system, does not show any visible injury to the plaintiff's jaw or facial area and, certainly does not depict, as he has alleged, that the right side of his face was "broken and busted." [Doc. 1, ¶ 4].

However, there remains the issue of the quality of the photo, as well as the fact

that the plaintiff's right hand is not shown in the waist-up photograph. And too, the plaintiff has offered allegations of fact in his response, backed up by his affidavit, that his jaw and hand were swelling at the time of his arrest and during his trip to jail.

The Court concludes that the determination as to whether defendant Ramsey acted with deliberate indifference depends upon which of the parties' conflicting versions of the facts is true. A jury accepting the plaintiff's factual allegations could find that defendant Ramsey "subjectively perceived a risk of harm and then disregarded it" and, therefore, exhibited deliberate indifference to the plaintiff's serious medical needs. *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir.2001), *cert. denied,* 537 U.S. 817 (2002). *See also Brown v. Hughes*, 894 F.2d at 1538 (finding that a few hours' delay in receiving medical care for urgent needs such as broken bones may constitute deliberate indifference); *but cf. Hubbard v. Gross*, 2006 WL 2787044, at *5 (finding that the evidence did not show that arrestee's broken hand was so serious that a two-hour delay in receiving a splint was unreasonable).

2. *Was the plaintiff's right to medical care clearly established by January 1, 2004?*

Even if the allegations of fact may establish a constitutional deprivation, the defendant may still be "shielded from liability for civil damages if [his] actions did

not violate clearly established statutory or constitutional rights of which a reasonable person would have known. " *Hope v. Pelzer*, 536 U.S. 730, 752, (2002) (internal quotations omitted). "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action ... assessed in light of the legal rules that were clearly established at the time it was taken." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1094 (6th Cir.1992) (internal citations and quotations omitted). The "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

  The Sixth Circuit recently addressed the qualified-immunity issue in the context of an arrestee's right to be free from deliberate indifference to serious medical needs. The arrestee entered the jail on April 18, 2002, complained to the booking officer of chest pains and of her need to go to the hospital, and died from a heart attack a few hours later. The Sixth Circuit held, as follows:

> Finally, to complete the qualified immunity analysis, this right was clearly established at the time of [defendant's] violation. As early as 1972, this court stated that "where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process." *Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972). Furthermore, in 1992, this court explicitly held that a

> pretrial detainee's right to medical treatment for a serious medical need has been established since at least 1987. *Heflin v. Stewart County*, 958 F.2d 709, 717 (6th Cir.1992). The right that (defendant) violated was therefore clearly established.

*Estate of Carter v. City of Detroit*, 408 F.3d 305, 307 (6th Cir. 2005).

Accordingly, since genuine issues of material fact exist as to whether defendant Ramsey was deliberately indifferent to the plaintiff's serious medical needs, and since the plaintiff's right to be free from such conduct was clearly established on January 1, 2004, at the time of the alleged violation, defendant's motion for summary judgment based on grounds of qualified immunity will be **DENIED**. [Doc. 18]

B. *Motion to Dismiss Amended Complaint [Defendants Cocke County, Tennessee, and C. J. Ball].*

Defendants Cocke County, Tennessee and Deputy C. J. Ball have filed a joint motion to dismiss, asserting that the plaintiff has failed to state a claim against them. [Doc. 34]. Defendant County argues that, under § 1983, a governmental entity has no vicarious liability for a constitutional violation, unless the plaintiff shows that his injury was proximately caused by a policy or custom of that entity.

As defendant County correctly points out, a governmental entity such as the County is not liable for an injury inflicted solely by an employee or agent; liability attaches only where a constitutional violation results from the "execution of a

government's policy or custom." *Gregory v. Shelby County,* 220 F.3d 433, 441 (6th

Cir.2000) (citing *Monell v. Department of Social Services of City of New York,* 436

U.S. 658, 694 (1978)).  To state a section 1983 claim against a county, based on its

policy or custom, a plaintiff must: 1)  identify the policy; 2) connect the policy to the

county itself,  and 3) demonstrate that the injury was incurred because of the execution

of that policy.  *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir.), *cert.*

*denied*, 510 U.S. 1177 (1994).

The plaintiff has not identified, or even alleged, the existence of a

policy, much less connected a policy to the County or shown that the policy caused

his injury.   Instead, he has sued the County on the basis that it is the "entity

responsible for the constitutional violations as stated."   [Doc. 21 at 1].  Clearly, the

plaintiff is seeking to impose vicarious liability on the County based on a theory of

respondeat superior, which is not a valid basis of liability under § 1983.  *See Monell,*

436 U.S. at 694.  Thus, because plaintiff has failed to allege the essential elements of

§ 1983 claim against this governmental entity, the County's motion to dismiss will be

**GRANTED**.[8]

_____

[8] In his response, the plaintiff argues that he would have needed to have access to the
[written] policies which set out the procedures to be followed when a pretrial detainee who has a
medical need enters the jail; that, since he is not employed at the jail, he had no such access; and
that he, essentially, had no reason or opportunity to obtain such access because of his brief
confinement in the jail.  To the extent that the plaintiff's arguments are intended to imply that he
was unable to procure facts essential to justify his opposition to the defendant's motion, the

Defendant Ball also moves to dismiss the claims against him. He correctly argues that, when a defendant has been sued in his official capacity, a court must proceed as if a plaintiff has in fact sued the governmental entity the defendant represents, in this case, Cocke County, Tennessee. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Brandon v. Holt*, 469 U.S. 464, 471 (1985); *Monell*, 463 U.S. at 690 n.55. As noted, to prevail in an official-capacity claim against a municipality, the plaintiff is required to show that the violation of his constitutional rights resulted from acts or conduct representing official policy or custom adopted by the County. *Id.*, at 690-91; *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245-46 (6th Cir. 1989). As discussed above, the plaintiff does not allege that the violation of his rights was the result of any policy or custom on the part of the County. Thus, the plaintiff fails to state a claim against defendant Ball in his official capacity and this defendant's motion to dismiss, likewise, will be **GRANTED**. [Doc. 34].

C. *Motion for Summary Judgment [Defendant  C. J. Ball].*

Defendant Ball argues, in his next motion, that he is entitled to summary judgment in his personal capacity because he too enjoys qualified immunity. [Doc.

---

Court simply points out that the existence of a policy is an essential fact to be pled and, if at the time the complaint was prepared, the plaintiff was not even aware of such a policy, he had no grounds upon which to sue the County. Furthermore, the record is devoid of any indication that, in the nearly three years following his brief confinement in the jail, the plaintiff has ever sought this information from the defendants or asked for court assistance in obtaining it.

35].   Offered in support of this motion are an affidavit of the Administrator and Records Custodian of the Cocke County Jail, Michael McCarter, and a memorandum brief.   [*Id*., Attach. 1 and 2].   Appended to the affidavit is the plaintiff's medical request slip (Mr. McCarter attests to its authenticity), which bears a date of January 1, 2004, a time of  12:35, and a terse description of his  medical problem, i.e., "head" and "hand."  [*Id*., Attach. 1, Exh. 1].   On the signature line is this notation: "States unable to sign- c/o Josh Webb Witness."        The request slip reflects that the plaintiff was seen at 9:30 a.m. on January 2nd  by Leesa Morris, LPN, that he was given various medications, including one for pain, that he was instructed to continue his other medications; and that he received a splint on his right hand.   There is also a notation indicating that the nurse spoke with Dr. Hale, the Medical Director, who advised her that, if the plaintiff had an indentation in his face, rather than an outward bulge, and had no crackling sound upon palpitation of the area, then he should be observed for two days and should show signs of improvement, but that, if his condition did not improve, facial x-rays would be performed.

Defendant Ball relies on the medical request slip as the basis of his qualified immunity defense, arguing that a reasonable jury could not find deliberate indifference to serious medical needs because the slip reflects that the nurse who examined the plaintiff and the doctor she consulted decided that the proper course of

action was to observe the plaintiff for a couple of days. His alternative argument is that he enjoys qualified immunity because a reasonable officer in defendant Ball's position could have believed that it was appropriate to wait one day to obtain medical treatment, given that, the very next day, the jail's medical care providers determined that the plaintiff should be observed for two days.

There are flaws in the defendant's arguments, the first of which is that the argument takes account of part of the plaintiff's medical request slip, but disregards other parts. Among the ignored portions of the request slip are the sections indicating that Nurse Morris gave the plaintiff an injection of pain medication and a hand splint and advised him to continue with other medications, including one to alleviate pain. Therefore, to the extent that the defendant is implying that the treatment rendered to the plaintiff was nothing more than to observe him for any signs of improvement, such an implication is belied by the request slip itself.

The second argument (i.e., that a reasonable officer in the defendant's position could have believed that it was proper to wait one day to furnish the plaintiff medical treatment) must also be rejected. Though it is true that *Saucier* teaches that the determination as to whether a right is clearly established depends upon whether a reasonable officer facing the same circumstances would recognize that his conduct was unlawful, *see id.*, 533 U.S. at 202, it is also true that whether it was objectively

reasonable for the defendant to conclude that his actions were proper is a jury task because, as discussed previously, the facts pertinent to such a determination are in dispute. *Flint ex rel. Flint v. Kentucky Dept. of Corrs.*, 270 F.3d 340, 346 (6th Cir.2001) (observing that a "court should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights") (citation and internal punctuation marks omitted).

The facts supporting the plaintiff's claims against this defendant officer are that he had visible injuries, including facial fractures and a broken bone in his hand, that he informed the defendant of his need for medical care, that defendant Ball responded that he "would not receive medical care today because it is/was New Year's Day," and that medical care was not rendered that day. Viewing the facts and drawing all reasonable inferences in the light most favorable to the plaintiff, the record appears to show that defendant Ball's conduct violated a right so clearly established that he reasonably should have understood his duty to act otherwise. *See, e.g., Garretson v. City of Madison Heights*, 407 F.3d 789, 798-99 (6th Cir. 2005) (observing that "if a prisoner with a serious medical injury requested help and was ignored, such circumstances could give rise to a deliberate indifference claim") (citing *Rich v. City*

*of Mayfield Heights*, 955 F.2d 1092, 1097 n.3 (6th Cir. 1992)).

Defendant Ball is not entitled to qualified immunity and his motion for summary judgment will be **DENIED**. [Doc. 35].

D. *Motion to Dismiss Second Amended Complaint [Defendants Cocke County, Tennessee, and C. J. Ball].*

In this motion, defendants County and Ball assert that the claims against them should be dismissed because the plaintiff has failed to show that he has exhausted his administrative remedies as required by 42 U.S.C. § 1997e(a). [Doc. 37] The cited statute provides that a prisoner confined in any jail, prison, or other correctional facility may not bring a § 1983 civil rights action in federal court "until such remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statute has been interpreted to require "than an inmate must exhaust [available remedies] irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741, n.6 (2001). The Supreme Court has also cautioned courts against "read[ing] futility or other exceptions into statutory exhaustion requirements, where the statute itself provides for no such exceptions. *Id.* Moreover, it is the prisoner who bears the burden of showing exhaustion of administrative remedies. *See Brown v. Toombs*, 139 F.3d.1102, 1104 (6th Cir.), *cert. denied*, 525 U. S. 833 (1998).

At the time the defendants filed their motion, the pleadings and other

filings did not disclose whether the Cocke County jail had a grievance system on January 1, 2004 or, if so, whether the plaintiff had complied with § 1997e(a)'s requirements. The parties, therefore, were ordered to submit answers to these questions and the defendants further were directed to submit supporting documents. The defendants filed a response, indicating that the Cocke County jail had a formal and informal grievance system in place on January 1, 2004, that they had been unable to locate copies of the necessary supporting documents, and that they were withdrawing their defense that the plaintiff had failed to administratively exhaust his claims.

A court must dismiss a prisoner's 1983 complaint *sua sponte* if he does not demonstrate that he has exhausted his *available* administrative remedies. However, the modifier "available' [in the phrase 'such remedies as are available'] requires the possibility of some relief for the action complained of." *Booth*, 532 U.S. at 738.

Because it cannot be determined, on the basis of the current record,[9] whether the Cocke County jail had a grievance system in operation on January 1, 2004, which offered the plaintiff some relief for the actions complained of during his

_____

[9] The defendants alleged that there was a functioning grievance system at the jail during the relevant time frame, but did not submit any affidavit to this effect.

brief detention, the Court finds that the statute does not apply and does not require dismissal for failure to exhaust "available" administrative remedies. However, if, in the future, the defendants can show that the plaintiff could have secured some redress for his injuries through means of the grievance system, the statute would apply and would require the claims asserted against these defendants to be dismissed without prejudice for failure to exhaust administrative remedies.

For this reason, the motion to dismiss filed by defendants County and Ball [Doc. 37] will be **DENIED**.


IV. **Conclusion**

For the above reasons, the motions for summary judgment brought by defendants Ramsey and Ball will be **DENIED**; defendants Cocke County, Tennessee and C. J Ball's joint motion to dismiss claims asserted against them in their official capacity will be **GRANTED**; the motion to dismiss the second amended complaint by defendants Cocke County and Deputy Ball will be **DENIED**; and the claims for injunctive relief advanced by the plaintiff will be **DISMISSED**.


**ENTER**:

<u>s/J. RONNIE GREER</u>
UNITED STATES DISTRICT JUDGE